EFILED Document – District Court
CO Adams County District Court 17th JD
2012CV1230
Filing Date: Oct 04 2012 04:52PM MDT
Transaction ID: 46818399

| | |
|---|---|
| DISTRICT COURT, ADAMS COUNTY, STATE OF COLORADO<br>Court Address:<br>1100 Judicial Center Drive<br>Brighton, CO 80601 | |
| **Plaintiffs:**<br><br>**NOEL SMITH and STEPHANIE SMITH,**<br><br>v.<br><br>**Defendants:**<br><br>**CITY OF THORNTON; MICHAEL SNOOK, in his individual and official capacity; CHRISTOPHER STUTTERS, in his individual and official capacity; BRYAN BENNETT, in his individual and official capacity; JOHN VERMILYE, in his individual and official capacity.** | |
| | **▲COURT USE ONLY▲** |
| *Attorneys for Noel and Stephanie Smith*:<br>Loren M. Brown, #34837<br>DONELSON CIANCIO & GRANT, P.C.<br>8001 Arista Place, Ste. 400<br>Broomfield, CO 80020<br>Phone: 303-450-1665<br>Fax: 303-457-1175<br>E-mail: lorenbrown@colo-law.com | Case No.<br><br><br>Div. |

## COMPLAINT AND JURY DEMAND

Plaintiffs, Noel Smith and Stephanie Smith, by and through their counsel, DONELSON CIANCIO & GRANT, P.C., and for their complaint against Defendants, state and allege as follows:

### PARTIES, JURISDICTION, AND VENUE

1.      Noel Smith (hereinafter "Plaintiff Noel Smith") resides in the City of Thornton, County of Adams, State of Colorado.

2.      Stephanie Smith (hereinafter "Plaintiff Stephanie Smith") resides in the City of Thornton, County of Adams, State of Colorado.


**EXHIBIT**

A

3.     Michael Snook (hereinafter "Defendant Snook") at all times relevant to this litigation, was a police officer with the Thornton Police Department, acting under color of state law in his official capacity as a law enforcement officer employed by the City of Thornton.

4.     Christopher Stutters (hereinafter "Defendant Stutters") at all times relevant to this litigation, was a police officer with the Thornton Police Department, acting under color of state law in his official capacity as a law enforcement officer employed by the City of Thornton.

5.     Bryan Bennett (hereinafter "Defendant Bennett") at all times relevant to this litigation, was a police officer with the Thornton Police Department, acting under color of state law in his official capacity as a law enforcement officer employed by the City of Thornton.

6.     John Vermilye (hereinafter "Defendant Vermilye") at all times relevant to this litigation, was a Sergeant with the Thornton Police Department, acting under color of state law in his official capacity as a law enforcement officer employed by the City of Thornton.

7.     The City of Thornton (hereinafter "Defendant City of Thornton"), is home rule city, with a principle address of 9500 Civic Center Drive, City of Thornton, County of Adams, State of Colorado.  At all times relevant, Defendant City of Thornton was the employer of Defendants Snook, Stutters, Bennett, and Vermilye, and is a proper entity to be sued under 42 U.S.C. § 1983.

8.     On or about October 7, 2010, Plaintiff Noel Smith suffered catastrophic and permanent injuries after being struck by a Ford Expedition engaged in a high speed pursuit with the above-listed Defendants.

9.     Prior to the collision, Fort Collins Detectives located two suspects in Thornton who had stolen a vehicle during a kidnapping and robbery four days prior in the City of Fort Collins.

10.     Detectives from the Fort Collins Police Department and officers from the Thornton Police Department first engaged in pursuit of the suspects in a commercial parking lot located in the County of Adams, and then down a narrow roadway through a residential condominium complex where small children and pedestrians were present.

11.     The Expedition then collided with a marked police car in the attempt to flee the condominium complex.

12.     Defendants Snook, Stutters, and Bennett determined that continued pursuit of the Expedition was too dangerous and terminated the pursuit.

13.     Defendant Vermilye, who was not physically engaged in the pursuit, had and took the time to deliberate and consider the risks and options available regarding continuation of the pursuit.

2

14.     Having taken the time to deliberate, Defendant Vermilye ordered continuation of the pursuit in complete disregard for and with deliberate indifference to public's safety and welfare in a manner which shocks the conscience.

15.     In response to Defendant Vermilye's order, the Defendants Snook, Stutters, and Bennett re-engaged their pursuit through a residential area, during rush hour and at speeds well in excess of the posted speed limit.

16.     The overall lack of concern and failure to properly evaluate the facts and circumstances of the surroundings was a conscious shocking disregard for public safety and for the probability that the high speed pursuit of the Expedition would end in a collision with an innocent bystander.

17.     Tragedy indeed struck when the Expedition collided with Plaintiff Noel Smith, as he drove his motorcycle on the roadway.  The collision vaulted Plaintiff Noel Smith from his motorcycle across several lanes of traffic, and permanently injuring Plaintiff Noel Smith.

18.     Plaintiff Noel Smith suffered economic and noneconomic injuries, damages, and losses, as well as damages related to permanent disability, impairment, and disfigurement as a result of the continued pursuit and resulting collision, and his claims arise out of the collision and the resulting injuries, damages, and losses.

19.     Plaintiff Stephanie Smith, the legal wife of Plaintiff Noel Smith also suffered damages for loss of consortium as a result of the injuries sustained by Plaintiff Noel Smith in the continued pursuit and resulting collision, and her claims arise out of the collision and resulting injuries, damages, and losses suffered by Plaintiff Noel Smith.

20.     Plaintiffs timely provided official notice of claims to all defendants pursuant to C.R.S. § 24-10-109 and advisement of claims under 42 U.S.C. 1983.

21.     This action also arises under the Constitution and laws of the United States and is brought pursuant to Title 42 U.S.C. § 1983.  Jurisdiction supporting Plaintiff's claim of attorney fees and costs is conferred by 42 U.S.C. § 1988.

22.     Venue is proper in this Court pursuant to  C.R.C.P. 98(c).

23.     The Court has jurisdiction over the claims asserted herein pursuant to C.R.S. § 13-1-124, Title 42 U.S.C. § 1983, and other applicable laws.

## GENERAL ALLEGATIONS

(Unless otherwise noted, all allegations set forth hereinafter are as to all times relevant to this Complaint.)

24.     Plaintiffs incorporate the proceeding paragraphs as if set forth fully herein.

25.     On or about October 3, 2010, four (4) days before the high speed pursuit which resulted in the collision between the Expedition and Plaintiff Noel Smith, the Fort Collins Police Department received a report from Dan Langston related to crimes which had been committed against Mr. Langston.

26.     Mr. Langston informed the Fort Collins Police Department that Christopher Green and another unknown individual, assaulted, kidnapped, and robbed Mr. Langston.  Mr. Langston also reported that his vehicle was stolen by Mr. Green and an unknown individual.

27.     Mr. Langston's vehicle was a 1998 Ford Expedition, bearing Colorado License Plate 210-UYT (hereinafter as "the Expedition").

28.     After Mr. Langston reported the crimes, the Fort Collins Police Department ascertained the identity of Christopher Green as one of Mr. Langston's assailants.

29.     The Fort Collins Police Department then gathered further information on Christopher Green, which led Detectives Coury and Haugo with the Fort Collins Police Department to a location in Thornton, Colorado where Christopher Green was thought to be located.

30.     On or about October 7, 2010 at approximately 3:06 pm, four (4) days after the incident involving Mr. Langston, the Fort Collins Police Department notified the communications center for the Thornton Police Department that Fort Collins Detectives Coury and Haugo, were outside the Hawthorn Hills Apartments, located at 11801 York Street, conducting surveillance and waiting for Christopher Green and other suspects to arrive on scene.

31.     Detectives Coury and Haugo were stationed outside the Hawthorn Hills Apartments in two unmarked police cars conducting surveillance, and waiting for search and arrest warrants for Christopher Green.

32.     At or about 3:58 pm on October 7, 2010, the Expedition arrived at the Hawthorn Apartments.

33.     A short time later, Christopher Green emerged from the Hawthorn Apartments, and approached the Expedition.

34.     Detectives Coury and Haugo notified the Thornton Police Department of the vehicle's arrival and requested verification that the Expedition was reported stolen.

35.     The Thornton Communication Center checked available records and confirmed that the Expedition had been reported stolen.

4

36.     Detectives Coury and Haugo requested that the Thornton Police Department keep marked police units out of the area until further requested by Detectives Coury and Haugo.

37.     The Thornton Police Department responded that it would keep Thornton Police Officers out of the area until it received said request.

38.     After Christopher Green was visualized at Hawthorne Apartments by Detectives Coury and Haugo, Christopher Green and the suspects remained in the building for over one (1) hour.

39.     Upon information and belief, during that one hour, the Expedition remained unoccupied and unattended.

40.     During that one hour period, Detectives Coury and Defendant Haugo took no measures to disable the Expedition or to prevent the Expedition from leaving the parking lot while Christopher Green and others were inside the Hawthorn Apartments.

41.     During that one hour period, Detectives Coury and Haugo did not request assistance from the Thornton Police Department or any other law enforcement agency to take measures to disable the Expedition or to prevent the Expedition from leaving the parking lot.

42.     On or about October 7, 2010 at 5:04 pm, Christopher Green and another male returned to the Expedition and departed the Hawthorn Apartments.

43.     Detectives Coury and Haugo notified the Thornton Police Department that Christopher Green and another male had re-entered the Expedition and were leaving the premises.

44.     At no time did Detectives Coury and Haugo request the Thornton Police Department to stop the Expedition from leaving the Hawthorne Apartment complex.

45.     Instead, Detectives Coury and Haugo followed the Expedition in the unmarked vehicles as the Expedition exited the premises.

46.     Detectives Coury and Haugo followed the Expedition in unmarked vehicles, and were able to positively identify Christopher Green as one of the occupants of the Expedition.

47.     Detectives Coury and Haugo continued to follow the Expedition into the parking lot located at the southwest corner 120th Avenue and Colorado Boulevard.

48.     Detectives Coury and Haugo updated the Thornton Police Department of their movements, and the movements of the Expedition via cell phone.

49.     The Expedition then entered the drive-thru of the McDonald's located in the parking lot at southwest corner of 120th Avenue and Colorado Boulevard.

50.     Detectives Coury and Haugo did nothing to contain the Expedition or prevent it from leaving the parking lot or the drive thru.

51.     Detectives Coury and Haugo did not request the assistance of the Thornton Police Department or any other law enforcement agency to contain the Expedition or prevent it from leaving the parking lot or drive thru.

52.     As the Expedition exited the McDonald's drive-thru, three marked patrol cars from the Thornton Police Department, driven by Defendants Snook, Stutters, and Bennett arrived in the area.

53.     Defendants Snook, Stutters, and Bennett were able to see the Expedition while on 120th Avenue, at the intersection with Colorado Boulevard.

54.     At that time, the Expedition traveled north across 120th Avenue and into the Mission Trace Shopping Center, at the northwest corner of 120th Avenue and Colorado Boulevard.

55.     The Mission Trace Shopping Center is a heavily trafficked commercial space with parking lots accessing several commercial strip mall centers.

56.     Detectives Coury and Haugo continued to follow the Expedition into the Mission Trace Shopping Center.

57.     Defendant Bennett confirmed, through Thornton Dispatch, that the Expedition was the stolen vehicle which they were in the area to apprehend.

58.     Defendant Stutters then entered into the Mission Trace Shopping Center parking lot through the same entrance as the Expedition and took a position behind the Expedition.

59.     Defendants Snook and Bennett entered the Mission Trace Shopping Center parking lot through another entrance to the parking lot, and also took a position behind the Expedition.

60.     On or about October 7, 2010, at approximately 5:15 pm, Defendants Snook, Stutters, and Bennett positioned their marked police vehicles for a "high risk traffic stop" and activated their emergency lights and sirens.

61.     The Expedition immediately accelerated through the parking lot, failing to stop for a clearly marked and posted stop sign while speeding through the exit of the parking lot.

6

62.     The Expedition did not attempted to slow down, stop, or pull over as the Thornton Officers and Fort Collins Detectives pursued it at high rates of speed through the commercial parking area and onto 121st Avenue.

63.     Defendants Snook, Stutters, and Bennett pursued the Expedition with lights and sirens activated.

64.     The Expedition then traveled eastbound on 121st Avenue, reaching speeds of 35 to 40 miles per hour.

65.     Defendants Snook, Stutters, and Bennett and Detectives Coury and Haugo continued pursuit of the Expedition with lights and sirens activated.

66.     The Expedition next entered into a Condominium Complex located at 3900 E. 121st Avenue by making a left turn.

67.     The Expedition traveled through the Condominium Complex and down a narrow driveway lined with carports while Defendants Snook, Stutters, and Bennett and Detectives Coury and Haugo followed in close pursuit.

68.     Defendant Stutters observed several pedestrians in the Condominium Complex as the Expedition sped down the driveway.

69.     During the pursuit of the Expedition through the Condominium Complex, at least one pedestrian in the Condominium Complex had to rush across the driveway to avoid being struck by the Expedition.

70.     During the pursuit of the Expedition through the Condominium Complex, Defendant Snook also observed a small child standing in a front yard with a bicycle.

71.     Realizing the danger created by the pursuit of the Expedition through the Condominium Complex, Defendant Snook became concerned that a pedestrian or bystander might be hit by the Expedition.

72.     Out of concern for the public's safety, Defendant Snook allowed for additional distance between his vehicle and the Expedition.

73.     At that time, Defendant Bennett entered into the Condominium Complex through the west entrance and positioned his marked police car in front of the west Condominium Complex exit.

74.     Defendant Snook, understanding the extreme danger to the public caused by the pursuit of the Expedition, radioed that the chase would be terminated if the Expedition did not stop upon coming into contact with Defendant Bennett's position.

75.   As the pursuit continued, the Expedition turned towards the exit where Officer Bennett had entered the complex and partially blocked the exit.

76.   The Expedition continued forward, did not slow or stop, and collided with the left front of Defendant Bennett's patrol car.

77.   Defendant Bennett was not injured in the collision.

78.   Immediately following the collision, Defendant Bennett aired by radio that he was not injured.

79.   After the Expedition collided with Defendant Bennett's vehicle, and drove from the Condominium Complex, the Defendants Snook, Stutters, and Bennett possessed all of the information necessary to determine that pursuit of the Expedition was too dangerous to continue.

80.   After opportunity for deliberation, Defendants Snook, Stutters, and Bennett determined that the pursuit of the Expedition must be terminated as the pursuit created an unreasonable risk of injury or damage to life or property.

81.   Defendants Snook, Stutters, and Bennett then terminated their pursuit of the Expedition by bringing their vehicles to a complete stop in the roadway, and turning off their sirens and emergency lights.

82.   Defendant Snook communicated termination of the pursuit via radio.

83.   Upon information and belief, the communication from Defendant Snook terminating the pursuit was heard and understood by Defendant Vermilye.

84.   The Expedition disappeared from the view of Defendants Snook, Stutters, and Bennett as the Expedition turned onto another street.

85.   Upon information and belief, at that time, Defendant Vermilye was stationed at the Thornton Police Department.

86.   After the Defendants Snook, Stutters, and Bennett terminated pursuit of the Expedition, Defendant Vermilye sought confirmation by radio from Lt. Commander Sloan regarding more information on the suspect Christopher Green, asking what crimes he was wanted for.

87.   Defendant Vermilye received confirmation from Lt. Commander Sloan that the Expedition was a stolen vehicle, and that the suspects were also wanted for robbery and kidnapping.

88.    At no time were Defendant Vermilye or Lt. Commander Sloan actively engaged in the pursuit of the Expedition.

89.    After Defendants Snook, Stutters, and Bennett terminated the pursuit, Defendant Vermilye had adequate time and opportunity to deliberate and consider the options at hand.

90.    Upon information and belief, Defendant Vermilye took the opportunity to deliberate and consider his options.

91.    After actual deliberation and without any additional discussion with the officers on scene, Defendant Vermilye determined that the pursuit should start again.

92.    Defendant Vermilye then ordered renewed pursuit of the Expedition.

93.    When Defendant Vermilye ordered renewed pursuit of the expedition, he knew or should have known the risks and dangers to the public, present safety issues, traffic conditions, and hazards in the area.

94.    At that time, Defendants Snook, Stutters and Bennett also knew or should have known the risks and dangers to the public, present safety issues, traffic conditions, and hazards in the area.

95.    Defendants Snook, Stutters and Bennett did not question Defendant Vermilye's order to engage in the second pursuit or offer any additional information regarding the circumstances on scene that led to the termination of the first pursuit.

96.    Instead, Defendants Snook, Stutters, and Bennett initiated a second pursuit of the Expedition as ordered by Defendant Vermilye.

97.    Defendants Vermilye, Snook, Stutters and Bennett acted with conscious shocking deliberate indifference by disregarding the known and/or obvious consequences of engaging the Expedition in a second pursuit, including but not limited to, the risks the suspects were willing to take and the consequences to public safety.

98.    Defendants Snook, Stutters, and Bennett then continued in the last known direction of the Expedition on westbound 121st Avenue and caught up to the Expedition.

99.    In order to catch up to the Expedition, Defendants Snook, Stutters, and Bennett far exceeded the posted speed limits then existing on the roadway.

100.    The officers pursued the Expedition westbound on 124th Avenue at speeds in excess of the then existing speed limits on the roadway.

9

101.    Defendants Snook, Stutters, and Bennett pursued the Expedition at speeds reaching approximately seventy (70) miles per hour in a residential area.

102.    The posted speed limit on 124th Avenue was 30 miles per hour.

103.    The Expedition turned northbound onto 1st Street, then eastbound on Birch Avenue, and then turned driving northbound on York Street.

104.    The Expedition then ran a red traffic signal at a high rate of speed, nearly colliding with several crossing vehicles, and forcing Eastbound and Westbound traffic to brake hard to avoid collisions.

105.    The Expedition continued northbound on York Street, approaching 136th Avenue, and failed to stop for several stop signs, and continued through those intersections at a high rate of speed.

106.    While fleeing, The Expedition swerved multiple times into oncoming traffic at high rates of speed along York Street.

107.    The entire pursuit of the Expedition transpired during rush hour and in a residential area.

108.    The Expedition ran another red traffic signal on York at the intersection of 136th Avenue.

109.    Eastbound and Westbound traffic on 136th Avenue was in full rush hour flow as the Expedition headed through the intersection on a red traffic signal at approximately fifty (50) miles per hour.

110.    At approximately 5:20 pm, Plaintiff Noel Smith drove his motorcycle eastbound on 136th Avenue and entered the intersection of York and 136th Avenue on a green traffic signal.

111.    At that moment, the Expedition collided with Plaintiff Noel Smith, vaulting him from his motorcycle and launching him approximately twenty (20) feet before coming to rest on the pavement.

112.    Plaintiff Noel Smith suffered catastrophic and permanent injuries as a result of the collision, including but not limited to, a fractured right femur, an open right tibia fracture, partial avulsion of the toe, and pelvic fracture.

113.    At all times relevant, Plaintiff Stephanie Smith was the legal wife of Plaintiff Noel Smith.

114.   Plaintiff Stephanie Smith has suffered damages from loss of consortium as a result of the collision and Plaintiff Noel Smith's resulting injuries.

115.   At all times pertinent hereto, all employees of the various agencies described were acting within the scope of their employment and under the color of law.

## FIRST CLAIM FOR RELIEF
### Governmental Immunity Act – C.R.S. § 24-10-106(1)(a)
### Plaintiffs Noel Smith and Stephanie Smith v. Defendants Snook, Stutter and Bennett in their individual and official capacities

116.   Plaintiffs incorporate the proceeding paragraphs as if set forth fully herein.

117.   At all times relevant hereto Defendants Snook, Stutters, and Bennett were police officers with the Thornton Police Department, and acting under the color of state law.

118.   On or about October 7, 2010, Defendants Snook, Stutters, and Bennett were operating City of Thornton police vehicles in a reckless manner, in pursuit of a suspected violator of the law, at high rates of speed, far in excess of the lawfully posted speed limits.

119.   Upon information and belief, the vehicles operated by Defendants Snook, Stutters, and Bennett were vehicles owned or leased by Defendant City of Thornton.

120.   In the operation of the vehicles, and as law enforcement officers who participated in the pursuit of the Expedition, Defendants Snook, Stutters, and Bennett had a duty to refrain from acting in a manner that unreasonably endangered the life and property of others on the roadway, and created an unreasonable risk of injury or damage to life or property.

121.   As described above, Defendants Snook, Stutters, and Bennett who were operating emergency vehicles during the chase negligently and unreasonably endangered the life and property of others by committing the following acts:

   a.  Recommencing a high speed pursuit of the Expedition after making the determination that the pursuit should be discontinued due to the risk of significant injury or death to innocent bystanders;

   b.  Failing to slow their pursuit to ensure safe operation of their vehicles when proceeding past a red or stop signals or stop signs;

   c.  Exceeding lawful speeds in a manner that endangered life and property;

   d.  Acting in a manner without due regard for the safety of all persons.

11

122.    The above conduct of Defendants Snook, Stutters, and Bennett caused significant and permanent injury and harm to Plaintiff Noel Smith.

123.    Defendants Snook, Stutters, and Bennett were negligent in their decision to recommence the high speed pursuit of the Expedition after making the determination to discontinue the pursuit of the Expedition.

124.    Defendants Snook, Stutters, and Bennett were negligent in failing to discontinue the high speed pursuit after the pursuit was recommenced in sufficient time so as not to endanger the life and property of others, including the Plaintiff Noel Smith.

125.    Defendants Snook, Stutters, and Bennett were negligent in failing to discontinue the high speed pursuit when it became evident that the likelihood of injury to innocent third parties was foreseeable and greatly outweighed by the potential benefit of apprehending the Expedition.

126.    The continued pursuit of the Expedition by Defendants Snook, Stutters, and Bennett caused a collision between the Expedition and Plaintiff Noel Smith.

127.    As a result of the negligence of Defendants Snook, Stutters, and Bennett, Plaintiff Noel Smith suffered catastrophic and permanent injuries.

128.    At all times relevant, Plaintiff Stephanie Smith was legally married to Defendant Noel Smith.

129.    As a direct and proximate result and consequence of Defendants Snook, Stutters, and Bennett's negligent conduct, Plaintiff Noel Smith suffered noneconomic injuries, damages, and losses.

130.    As a direct and proximate result and consequence of Defendants Snook, Stutters, and Bennett's negligent conduct, Plaintiff Noel Smith will suffer future noneconomic injuries, damages, and losses.

131.    As a direct and proximate result and consequence of Defendants Snook, Stutters, and Bennett's negligent conduct, Plaintiff Noel Smith suffered economic injuries, damages, and losses.

132.    As a direct and proximate result and consequence of Defendants Snook, Stutters, and Bennett's negligent conduct, Plaintiff Noel Smith will suffer future economic injuries, damages, and losses.

133.    As a direct and proximate result and consequence of Defendants Snook, Stutters, and Bennett's negligent conduct, Plaintiff Noel Smith has and will suffer damages related to physical impairment.

134.   As a direct and proximate result and consequence of Defendants Snook, Stutters, and Bennett's negligent conduct, Plaintiff Noel Smith has and will suffer damages related to physical disfigurement.

135.   As a direct and proximate result and consequence of Defendants Snook, Stutters, and Bennett's negligent conduct, and resulting injuries to Plaintiff Noel Smith, Plaintiff Stephanie Smith has suffered damages related to loss of consortium.

## SECOND CLAIM FOR RELIEF
### Governmental Immunity Act – C.R.S. § 24-10-106(1)(a) and Loss of Consortium – Vicarious Liability
### Plaintiffs Noel Smith and Stephanie Smith v. Defendant City of Thornton

136.   Plaintiffs incorporate the proceeding paragraphs as if set forth fully herein.

137.   Upon information and belief, at all times relevant, Defendants Snook, Stutters, and Bennett were agents and/or employees with Defendant City of Thornton.

138.   Upon information and belief, at all times relevant, Defendants Snook, Stutters, and Bennett were acting within the course and scope of their agency/employment with Defendant City of Thornton.

139.   Because Defendants Snook, Stutters, and Bennett were acting within the course and scope of their agency/employment with Defendant City of Thornton at the time of the above-mentioned collision, Defendant City of Thornton is vicariously liable for the negligent actions and/or omissions of its agents/employees, Defendants Snook, Stutters, and Bennett, and is also vicariously liable for Plaintiffs Noel Smith and Stephanie Smith's injuries, damages, and losses which were caused by that negligence.

## THIRD CLAIM FOR RELIEF
### Civil Rights Act - 42 U.S.C. § 1983 – Unlawful Police Conduct - 14th Amendment Violations
### Plaintiffs Noel Smith and Stephanie v. Defendants Snook, Stutters, Bennett, and Vermilye in their individual and official capacities

140.   Plaintiffs incorporate all other allegations set forth in this Complaint as if fully incorporated herein.

141.   At all times relevant, Defendants Snook, Stutters, Bennett, and Vermilye were acting under color of law.

142.   At all times relevant, Defendants Snook, Stutters, Bennett, and Vermilye were employed as police officers with Defendant City of Thornton.

13

143.    At all times relevant, Defendants Snook, Stutters, Bennett, and Vermilye were acting in their individual and official capacities.

144.    At all times relevant, Defendants Snook, Stutters, Bennett, and Vermilye acted with deliberate indifference, in a manner which shocks the conscience, to deprive Plaintiff Noel Smith of a recognized Fourteenth Amendment right to substantive due process under the United States Constitution by engaging in a high speed chase with reckless disregard for known dangers and for the safety of the public, including Plaintiff Noel Smith.

145.    At that time, it was known or should have been known by Defendants Snook, Stutters, Bennett, and Vermilye and Defendant City of Thornton that they could be held civilly liable for such actions.

146.    Defendants Snook, Stutters, Bennett, and Vermilye acted with deliberate indifference to the extreme risk of serious harm to the Plaintiff Noel Smith and his rights to substantive due process.

147.    Defendants Snook, Stutters, Bennett, and Vermilye together chose to recommence pursuit of the Expedition with deliberate indifference to the unjustifiable and substantial risk of substantial injury to the public.

148.    The actions of Defendants Snook, Stutters, Bennett, and Vermilye in recommencing the pursuit shock the conscience.

149.    Prior to recommencing the pursuit of the Expedition, Defendants Snook, Stutters, Bennett, and Vermilye had sufficient time and opportunity to deliberate as to whether to recommence pursuit of the Expedition.

150.    Prior to recommencing the pursuit of the Expedition, Defendants Snook, Stutters, Bennett, and Vermilye actually deliberated as to whether to recommence pursuit of the Expedition.

151.    Defendants Snook, Stutters, Bennett, and Vermilye demonstrated deliberate indifference engaging in recommencing pursuit of the Expedition when they knew or should have known the extreme danger to the public which would be caused by recommencing the pursuit, including deprivation of 14th Amendment substantive due process, and other constitutionally protected rights.

152.    Defendants Snook, Stutters, Bennett, and Vermilye knew or should have known of the extreme risks that the suspects were willing to take while fleeing police.

14

153.    The decision of Defendants Snook, Stutters, Bennett, and Vermilye to continue the pursuit of the Expedition resulted in a prolonged high speed pursuit which resulted in the Expedition colliding with Plaintiff Noel Smith.

154.    As a direct and proximate result of Defendants Snook, Stutters, Bennett, and Vermilye's actions, Plaintiff Noel Smith has suffered and will continue to suffer catastrophic and life altering injuries, as well as damages related to deprivation of his right to substantive due process, past and future noneconomic damages, past and future economic damages, and damages related to permanent disability, impairment, and disfigurement.

155.    As a direct and proximate result of Defendants Snook, Stutters, Bennett, and Vermilye's acts and/or omissions, as the legal wife of Plaintiff Noel Smith, Plaintiff Stephanie Smith also suffered damages related to loss of consortium.

156.    Defendants Snook, Stutters, Bennett, and Vermilye are not entitled to qualified immunity for the complained of contact.

### FOURTH CLAIM FOR RELIEF
**Civil Rights Act - 42 U.S.C. § 1983 – Supervisory Liability - 14th Amendment Violations
Plaintiffs Noel Smith and Stephanie Smith v. Defendant Vermilye in his individual and official capacities**

157.    Plaintiffs incorporate all other allegations set forth in this Complaint as if fully set forth herein.

158.    At all times relevant, Defendant Vermilye was acting in a supervisory capacity with the Thornton Police Department, acting as a superior over Defendants Snook, Stutters, and Bennett.

159.    At all times relevant Defendant Vermilye implemented and possessed responsibility for the continued operation of the Thornton Police Department policies regarding high speed pursuits.

160.    At all times relevant, Defendant Vermilye's implementation of that policy caused the recommended pursuit and the deprivation of Plaintiff Noel Smith's constitutional rights, including his right to substantive due process.

161.    Upon information and belief, Defendant Vermilye was aware of the events which transpired during the initial phases of the high speed pursuit.

162.    Upon information and belief, Defendant Vermilye was aware that the Expedition had created a significant and unreasonable risk of harm including deprivation of 14th Amendment substantive due process, and other constitutional protections, to innocent bystanders along the roadway.

163.    Defendants Snook, Stutters, and Bennett initially made the correct decision to terminate the pursuit of the Expedition after the Expedition collided Defendant Bennett's vehicle.

164.    Defendant Vermilye was aware that Defendants Snook, Stutters, and Bennett had made the decision to terminate pursuit.

165.    After the pursuit was terminated, Defendant Vermilye had sufficient time and opportunity to deliberate as to whether it was appropriate to recommence the pursuit of the Expedition.

166.    After the pursuit was terminated, Defendant Vermilye took the opportunity to deliberate as to whether it was appropriate to recommence the pursuit of the Expedition.

167.    After the pursuit was terminated, Defendant Vermilye actually deliberated as whether to recommence pursuit of the Expedition.

168.    After deliberation, Defendant Vermilye ordered Defendants Snook, Stutters, and Bennett to recommence pursuit of the Expedition.

169.    Defendant Vermilye's order to Defendants Snook, Stutters, and Bennett to recommence the pursuit created a substantial risk of significant harm and/or death, including deprivation of constitutional rights, to the general public as well as innocent bystanders to the chase, including Plaintiff Noel Smith.

170.    Upon information and belief, Defendant Vermilye was aware of the substantial risk of significant harm created by his order.

171.    By ordering that Defendants Snook, Stutters, and Bennett recommence the pursuit of the Expedition, Defendant Vermilye exhibited deliberate indifference to the substantial risk of significant harm created.

172.    Defendant Vermilye's deliberate indifference shocks the conscious.

173.    Defendant Vermilye knew or reasonably should have known that his order for Defendants Snook, Stutters, and Bennett to recommence the pursuit would cause a continued pursuit that would cause injury to others, including injury to constitutional rights and protections.

174.    Defendants Snook, Stutters, and Bennett responded to Defendant Vermilye's order to recommence the pursuit of the Expedition, and in fact recommenced pursuit of the Expedition.

175.    Defendants Snook, Stutters, and Bennett's actions in recommencing and continuing the pursuit of the Expedition resulted in an extremely dangerous high speed pursuit.

176.    As a direct and proximate result of the recommenced pursuit, the Expedition collided with Plaintiff Noel Smith, thereby injuring Plaintiff Noel Smith.

177.    As a direct and proximate result of Defendant Vermilye's acts and/or omissions, resulting in the recommenced pursuit, Plaintiff Noel Smith suffered catastrophic and life altering injuries, damages, and losses, including but not limited deprivation of Plaintiff Noel Smiths right to substantive due process, past and future noneconomic damages, past and future economic damages, damages related to permanent disability, impairment, and disfigurement.

178.    As a direct and proximate result of Defendant Vermilye's acts and/or omissions, as the legal wife of Plaintiff Noel Smith, Plaintiff Stephanie Smith also suffered damages related to loss of consortium and deprivation of the right to substantive due process.

179.    Defendant Vermilye is not entitled to qualified immunity for the complained of contact.

WHEREFORE, Plaintiffs demand that judgment be entered in their favor and against Defendants in an amount to be determined by the trier of fact, plus interest as provided by law from the date of injury, and from the date of filing, plus costs of this action, including expert witness fees and post-judgment interest, plus attorneys fees as provided for by statute and rule, and for such other and further relief allowed by law and as this Court deems just.

## PLAINTIFFS DEMAND A TRIAL TO A JURY OF SIX (6) PERSONS

Dated on this 4th day of October, 2012.

Respectfully submitted,

*Original signature on file with*
*Donelson Cianico & Grant, P.C.*

*/s/ Loren M. Brown*

Loren M. Brown, #34837
DONELSON CIANCIO & GRANT, P.C.

Plaintiffs' Address:
3303 E. 138th Avenue
Thornton, Colorado 80602